<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GUILLERMO MONDRAGON,<br><br>    *Plaintiff*,<br><br>v.<br><br>SUSHITOBOX, a/k/a SUSHI ALI SAN, LLC, and ALEJANDRO DARIN CABRERA, individually,<br><br>    *Defendants*. | Civil No.: 22-cv-3102 (KSH) (CLW)<br><br><br><u>OPINION</u> |

**I. Introduction**

This matter comes before the Court on plaintiff Guillermo Mondragon's motion (D.E. 19) for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) against defendants Sushitobox, a/k/a Sushi Ali San, LLC ("Sushitobox") and Alejandro Darin Cabrera ("Cabrera," with Sushitobox, "defendants"). For the reasons that follow, the motion will be granted in part and denied in part.

**II. Background**

Mondragon was a cook at Sushitobox, an Asian-Peruvian restaurant in Newark, New Jersey, from July 1 through December 30, 2021. (D.E. 1, Compl. ¶¶ 9-10, 12; D.E. 19-2, Mondragon Aff. ¶ 4.) He claims that during his six-month tenure at the restaurant he generally worked 70-hour weeks, but he was only paid a fixed weekly rate of $1,250.00. (Compl. ¶ 26; Mondragon Aff. ¶ 5.) He also claims to have been fired by Cabrera, the restaurant's owner, after falling down the stairs while on the job. (Compl. ¶¶ 18, 28-32; Mondragon Aff. ¶ 13.)

On May 25, 2022, Mondragon filed a five-count complaint asserting causes of action for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.* (Count 1) and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et. seq.*

1

(Count 2), as well as for retaliatory discharge under the New Jersey Workers' Compensation Act ("NJWCA"), N.J.S.A. 34:15-1 to -146 (Count 3), *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980) (Count 4), and the New Jersey Conscientious Employee Protection Act ("NJCEPA"), N.J.S.A. 34:19-1 to -14 (Count 5). (D.E. 1.) Mondragon served defendants with the summons and complaint on September 7, 2022, but they failed to answer or otherwise respond. (D.E. 4.) Accordingly, the clerk entered default against them on November 2, 2022. (*See* D.E. 6.)

Mondragon initially moved for default judgment on November 5, 2022. (D.E. 8.) The Court denied the motion without prejudice so that he could address several deficiencies in his papers. (D.E. 10.) On June 5, 2023, Mondragon voluntarily dismissed Counts 3 and 5 of the complaint. (D.E. 16.) The next day, he renewed his motion for default judgment and sought $6,965.40 in unpaid overtime wages; $13,930.80 in liquidated damages; $45,537 in lost wages; $50,000 in punitive damages; and $6,916 in attorneys' fees and costs. (D.E. 19.) Mondragon relies on a moving brief (D.E. 19, Mov. Br.), a self-authored affidavit of damages (Mondragon Aff.), and a declaration of counsel to support the request for attorneys' fees and costs (D.E. 19-3, Glenn Aff.).[1]

### III.    Discussion

Fed. R. Civ. PP. 55(b)(2) "empowers the Court . . . to enter a default judgment against a defendant that has failed to plead or otherwise defend against a claim for affirmative relief." *Latta v. Boules*, 2023 WL 4420336, at *1 (D.N.J. July 10, 2023) (O'Hearn, J.). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and we repeatedly state our

---

[1] Although the Glenn affidavit purports to attach time and cost entries (*see* Glenn Aff. at 1), there is no such attachment. The entries were, however, included in Mondragon's original motion papers (*see* D.E. 8-2), and so the Court will consider them.

2

preference that cases be disposed of on the merits whenever practicable.'" *GEICO Marine Ins. Co. v. Moskovitz*, 2023 WL 3092048, at *2 (D.N.J. Apr. 26, 2023) (Kugler, J.) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Accordingly, before entering default judgment, the Court must determine "(1) whether the party seeking default judgment produced sufficient proof of valid service and evidence of jurisdiction, and (2) whether the unchallenged facts present a sufficient cause of action." *Wilton Reassurance Life Co. of New York v. Engelhardt*, 2023 WL 4864296, at *2 (D.N.J. July 31, 2023) (Vazquez, J.). If those threshold requirements are met, the Court must then "make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (Ackerman, J.) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

    A.  **Service and Jurisdiction**

The Court is satisfied that the threshold requirements of jurisdiction and proper service are satisfied. First, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 because the complaint asserts federal wage and hour claims (Compl. ¶¶ 37-41) and related state law claims (*id.* ¶¶ 42-63) over which the Court may exercise supplemental jurisdiction. Second, the Court has personal jurisdiction over Cabrera, a New Jersey resident, and Sushitobox, which operates its business in the forum. (*Id.* ¶¶ 9, 13, 17.) Finally, the Court is satisfied that both defendants were properly served, as a process server personally served Cabrera—both individually and as Sushitobox's owner—at defendants' Newark, New Jersey restaurant location in compliance with Fed. R. Civ. P. 4(e)(2)(A) and (h)(1)(B). (D.E. 4.)

### B. Legitimate Causes of Action

Mondragon asks the Court to find defendants liable for unpaid overtime compensation in violation of the FLSA and the NJWHL (Counts 1 and 2) and for retaliatory discharge in violation of *Pierce* (Count 4). (Mov. Br. at 5-11.)

Both the FLSA and the NJWHL provide that "a non-exempt employee is owed overtime compensation at the rate of one and one-half times the employee's 'regular rate' for all time worked in excess of forty hours each week." *Morales v. Aqua Pazza LLC*, 2022 WL 1718050, at *6 (D.N.J. May 27, 2022) (Arleo, J.) (citing 29 U.S.C. § 207(a)(2)(c), N.J.S.A. 34:11-56a4(b)(1)). To state a *prima facie* claim under either statute, the plaintiff must allege that: (1) he was an employee of the defendant; (2) the defendant was engaged in commerce; and (3) the defendant failed to pay overtime compensation for hours worked in excess of 40 in a given week. *See id.* at *3; *accord Perez v. Express Scripts, Inc.*, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020) (Cecchi, J.). Moreover, the FLSA provides for individual liability against employers. The term "employer" is defined as "any person acting directly or indirectly in the interests of an employer in relation to an employee," 26 U.S.C. § 203(d), and has been broadly interpreted to "effectuate the FLSA's liberal, remedial purposes," *Qu Wang v. Fu Leen Meng Rest. Ltd. Liab. Co.*, 2018 WL 1027446, at *2 (D.N.J. Feb. 23, 2018) (Hillman, J.) (quoting *Santiago v. Lucky Lodi Buffet Inc.*, 2016 WL 6138248, at *2 (D.N.J. Oct. 21, 2016) (Arleo J.)). The determination of employer status depends on control, and so courts consider whether the alleged employer, *inter alia*, "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

Here, the complaint alleges that: (i) Mondragon worked for defendants as a cook from July 1 through December 30, 2021; (ii) Mondragon routinely worked more than 40 hours per week but was not paid one and one-half times his regular rate of pay for hours worked over 40; (iii) defendants were engaged in commerce; and (iv) Cabrera, Sushitobox's owner and operator, was regularly present at the restaurant, managed its day-to-day financial operations, and had the power to make personnel decisions.[2]  (Compl. ¶¶ 9-10, 12, 16, 18-20, 25-27.)  As such, the Court is satisfied that Mondragon has pled legitimate claims against defendants for unpaid overtime compensation under Counts 1 and 2.

Turning to Count 4, New Jersey recognizes a common law claim for retaliatory discharge when an employee is discharged "contrary to a clear mandate of public policy." *Pierce,* 84 N.J. at 72.  The "discharge of an employee in retaliation for filing a workers' compensation claim has been found to fall within a '*Pierce*-type' claim.'" *Morris v. Siemens Components, Inc.*, 928 F. Supp. 486, 492 (D.N.J. 1996) (Orlofsky, J.) (citing *Lally v. Copygraphics*, 173 N.J. Super. 162 (App. Div. 1980), *aff'd*, 85 N.J. 668 (1981)); *see* N.J.S.A. 34:15-39.1 ("It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer.").  To make a *prima facie* case for such a retaliatory discharge claim, the plaintiff must demonstrate that "(1) he or she attempted to make a claim for workers' compensation benefits; and (2) he or she was discharged for making that claim." *Morris*, 928 F. Supp. at 493.

---

[2] The complaint alleges that Mondragon performed "cooking duties" for defendants. (Compl. ¶¶ 9, 12.)  Nothing in the complaint or the motion record suggests that Mondragon performed exempt duties under 29 U.S.C. § 213(a).  The Court is satisfied that he is a non-exempt employee for purposes of the FLSA and the NJWHL.

To establish the first element, "[a] plaintiff is not required to show that he physically filed a claim petition, but he must in some manner claim or attempt to claim his workers' compensation benefits." *Syder v. Express Servs., Inc.*, 2022 WL 577964, at *3 (D.N.J. Feb. 24, 2022) (McNulty, J.) (internal citations and quotations omitted). As such, the plaintiff may satisfy this element by demonstrating that he "'exercised a right protected by the worker's compensation act,' such as 'attending [a] medical appointment for [a] work-related injury' or requesting 'time off with statutory compensation during a period of temporary disability.'" *Marquez v. Upstairs at Chef Vola, Inc.*, 2022 WL 2274471, at *9 (D.N.J. June 23, 2022) (Rodriguez, J.) (quoting N.J. Automated Model Civil Jury Instruction 2.41, Worker's Compensation Retaliation). *See Cerracchio v. Alden Leeds, Inc.*, 223 N.J. Super. 435, 443 (App. Div. 1988) (first *prima facie* element satisfied where plaintiff "notif[ied] his employer of his injury and inquir[ed] as to the procedure to be followed to have his hospital bills paid"); *see also Carter v. AFG Indus. Inc.*, 344 N.J. Super. 549, 555 (App. Div. 2001) (recognizing that "[b]ecause the provision of medical care is an obligation of the employer under the [NJWCA], attendance at medical appointments constitutes the claiming of compensation benefits within the ambit of N.J.S.A. 34:15-39.1"). The second element "requires proof of an adverse employment action and a causal connection between the adverse action and the worker's claim for benefits." *Marquez,* 2022 WL 2274471, at *9.

Here, the complaint alleges that Mondragon sought treatment for his work-related injury with Cabrera's knowledge and informed Cabrera that his treating physician instructed him not to return to work for two days. (Compl. ¶¶ 28-31.) The complaint further alleges that Cabrera fired Mondragon on January 3, 2022—just four days after his injury and treatment at the hospital— and refused to provide any workers' compensation benefits. (*Id.* ¶¶ 32, 53.) These facts, which

6

must be taken as true by virtue of defendants' default, are sufficient to establish a retaliatory discharge claim.

### C. Default Judgment Factors

Having determined that Mondragon has sufficiently alleged causes of action under Counts 1, 2, and 4, the Court next weighs the default judgment factors set forth in *Emcasco*. First, "it is axiomatic that the Court cannot consider Defendants' defenses because Defendants have failed to respond to this action." *Qu Wang*, 2018 WL 1027446, at *3; *Santiago*, 2016 WL 6138248, at *3 (entering default judgment in FLSA action and reasoning that "in the absence of any responsive pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense."). Second, Mondragon will suffer prejudice if default judgment is not entered, as defendants' failure to respond leaves him "with no other means to vindicate his claims." *Qu Wang*, 2018 WL 1027446, at *3. Finally, because there is nothing before the Court demonstrating that defendants' failure to respond was due to something other than willful negligence, the Court may infer defendants' culpability from their default. *See Zuniga v. AM Framing LLC*, 2022 WL 203234, at *4 (D.N.J. Jan. 24, 2022) (McNulty, J.).

As all three factors weigh in favor of granting Mondragon's motion, the Court will enter default judgment in his favor.

### D. Damages

The Court next turns to Mondragon's request for damages. Although the Court accepted his factual allegations as true for purposes of entering default judgment, he must provide support for the damages sought. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (on default judgment motion, factual allegations taken as true except those that relate to damages).

7

1.  **FLSA/NJWHL Damages**

Under both the FLSA and NJWHL, "employers found in violation of the statutes' overtime provisions are liable for the overtime compensation not paid to the employee." *Zuniga*, 2022 WL 203234, at *4. To prove the amount of damages owed, Mondragon may "establish that he performed work for which he was not properly compensated through estimates based on his own recollection." *Qingwei Ma v. Chef Jon's Authentic Chinese Cuisine*, 2020 WL 6111037, at *4 (D.N.J. Oct. 16, 2020) (Salas, J.) (quoting *Santiago*, 2016 WL 6138248, at *3).

The amount of unpaid overtime wages due to Mondragon is based on his "regular rate" of pay, the number of overtime hours he worked per week, and the number of weeks affected. *See* 29 C.F.R. §§ 778.109, 778.113. The "regular rate" under the FLSA is an hourly rate, and for employees who receive a weekly salary, the regular hourly rate "is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. §§ 778.109, 778.113(a). Here, Mondragon certifies that he worked for defendants from July 1 through December 30, 2021 (or approximately 26 weeks) and generally worked 70 hours per week at a weekly rate of $1,250. (Mondragon Aff. ¶¶ 4-5.) In his counseled submission, Mondragon states that his hourly rate of pay is $17.86 and that he is owed half pay (or $8.93) for all hours worked over 40 (30 hours) for 26 weeks, totaling $6,965.40 in unpaid overtime wages. (*See* Mov. Br. at 11-12; see also Mondragon Aff. ¶ 5.) The Court is satisfied with counsel's calculations and will award unpaid wages in the full amount sought.

Mondragon's counseled submission also seeks liquidated damages under the FLSA or the NJWHL. (*See* Mov. Br. at 12-13.) Although liquidated damages in an amount equal to unpaid overtime wages is presumed for an FLSA violation, *see* 29 U.S.C. § 216(b), Mondragon seeks liquidated damages under the NJWHL, which allows a plaintiff to recover unpaid overtime

8

wages "and an additional amount equal to not more than 200 percent of the amount of the unpaid minimum wages . . . as liquidated damages," N.J.S.A. 34:11-56a25.  As defendants have not appeared to contest the higher liquidated damages award, the Court will award liquidated damages under the NJWHL in the amount of $13,930.80.  *See Zuniga*, 2022 WL 203234, at *4 (awarding liquidated damages under the NJWHL instead of the FLSA on default judgment motion).

### 2. *Pierce* Damages

Mondragon next seeks $45,537 in lost wages and $50,000 in punitive damages arising from his retaliatory discharge.  The New Jersey Supreme Court has endorsed the award of compensatory and punitive damages to rectify a retaliatory discharge in violation of N.J.S.A. 34:15-39.1.  *See Lally*, 85 N.J. at 670; *see also Carter*, 344 N.J. Super. at 553 (recognizing that the New Jersey Supreme Court in *Lally* affirmed the appellate division's ruling conferring "a common law cause of action for compensatory and punitive damages upon an employee discharged in violation of" N.J.S.A. 34:15-39.1).

Mondragon's request for lost wages is grounded in the express language of  N.J.S.A. 34:15-39.1, which provides that an employee who has been wrongfully discharged "shall be restored to his employment and shall be compensated by his employer for any lost wages arising out of such discrimination."   In his counseled submission, Mondragon claims that he is entitled to $1,517.90 for each week that he was out of work. (Mov. Br. at 13-14.)  Counsel calculated that figure by adding Mondragon's regular weekly wage ($1,250) with his unpaid overtime wage, assuming a 70-hour week ($267.90).  (*Id.*)  Mondragon certifies that he is entitled to 30 weeks of pay (or $45,537) because he "was out of work for 30 weeks" and "regularly looked for a new job" during that time. (Mondragon Aff. ¶¶ 15-16.)  Although Mondragon's support for

9

that assertion is barebones, defendants have not opposed by virtue of their default. Accordingly, the Court grants Mondragon's request for $45,537 in compensatory damages. The Court in its discretion will not award punitive damages arising from the same conduct. An award of $45,537 is sufficient both to make Mondragon whole for his retaliatory discharge and to "deter [defendants'] improper conduct" in the future. *Pierce*, 84 N.J. at 72.

### 3. Attorneys' Fees and Costs

Finally, Mondragon seeks attorneys' fees and costs under the FLSA and the NJWHL, both of which provide for an award of fees and costs to a prevailing plaintiff in an overtime suit. *See* 29 U.S.C. § 216(b); *see also* N.J.S.A. 34:11-56a25.

The Third Circuit uses a "lodestar approach" to determine reasonable attorneys' fees. *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008). The lodestar approach requires the Court to "multiply[] the number of hours reasonably expended by a reasonable hourly rate." *Santiago*, 2016 WL 6138248, at *4. "The first step in applying the lodestar formula is to determine the appropriate hourly rate." *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *17 (D.N.J. Mar. 26, 2010) (Cavanaugh, J.) (quoting *Cityside Archives, Ltd. v. New York City Health & Hosp. Corp.*, 37 F. Supp. 2d 652, 658 (D.N.J. 1999) (Politan, J.)). In making that determination, the Court should "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *DirecTV, Inc. v. Clark*, 2007 WL 2212608, at *3 (D.N.J. July 27, 2007) (Simandle, J.) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990)). The Court may consider "[a]ffidavits from the attorney, other attorneys in the community, as well as other evidence." *City of Atl. City v. Zemurray St. Cap., LLC*, 2022 WL 92802, at *3 (D.N.J. Jan. 10, 2022)

10

(Hillman, J.). Once the Court is satisfied that the charged rate is reasonable, it must next determine "whether the amount of hours billed for the work completed was appropriate." *Id*. at *4.

Mondragon seeks fees for 14.3 hours of work performed by two partners at a $450 hourly rate. (*See* D.E. 8-2 at 3-4; *see also* Glenn Aff. at 1.) Defendants have not disputed that the proposed rate is reasonable, *see Ismail v. IHI Power Servs. Corp.*, 2023 WL 3689608, at *5 (E.D. Pa. May 25, 2023) (fixing hourly rates for attorneys at rates proposed by plaintiff where defendants failed to object), and the Court sees no reason to stray from the rate sought. Indeed, according to the Glenn affidavit, both attorneys have over 25 years of legal experience, and their firm "almost exclusively" litigates wage and hour claims under the FLSA and associated state laws. (Glenn Aff. 1-2.) Moreover, similar hourly rates have been upheld by courts in this district. *See Santiago*, 2016 WL 6138248, at *4 (on default judgment motion, approving hourly rate of $450 for partner); *see also United Rentals (N. Am.) Inc. v. Liberty Mut. Fire Ins. Co.*, 2022 WL 7997043, at *4 (D.N.J. Oct. 14, 2022) (Chesler, J.) (approving $450 hourly rate for partners where defendant did not object). Because the Court is satisfied from counsel's billing records that the amount and character of the work performed was reasonable, the Court will award the requested fee amount of $6,435.

Finally, Mondragon requests $481 in costs for filing and service fees. (*See* D.E. 8-2 at 3.) As the request for costs is well documented in counsel's billing records and narrowly tailored, the Court will award the full amount sought.

## IV. Conclusion

For the foregoing reasons, Mondragon's motion (D.E. 19) will be granted in part and denied in part. An appropriate order and judgment will issue.

Date: August 22, 2023 /s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.